In the Matter of the Claim of JERRY SUMMERS, Appellant, against THE MOHAWK VALLEY ROOFING CORPORATION and Another, Respondents.

STATE INDUSTRIAL BOARD, Respondent.

Third Department, November 13, 1935.

*Michael Yust* [*Lee, Brennan & Bastow* and *Earle C. Bastow* of counsel], for the appellant.

*Patrick S. Mason,* for the respondent State Insurance Fund.

*John J. Bennett, Jr., Attorney-General* [*Joseph A. McLaughlin, Deputy Attorney-General,* of counsel], for the State Industrial Board.

PER CURIAM. Two successive awards have been made herein by the referee against the State Insurance Fund, in favor of the claimant, and both of the awards were reversed by the Industrial Board. In so far as the record discloses the facts of the accident in this case, the claimant was employed on July 24, 1928, as a roofer's helper. He was assisting in attaching waterproofing material to the side wall of a tunnel connecting two buildings of the Marcy State Hospital. He was working on a scaffold, about fifteen or twenty feet above the ground, and was using pails of hot pitch in his work. The plank upon which he was standing broke, and the plank, the pitch and the claimant were precipitated to the flooring below. From sketchy evidence it is disclosed that he suffered injuries to his face, leg, arm, and an enlargement of the pupil of the right eye. The injuries to his " face," arm and leg are said to have healed. There is no evidence that claimant's eye ever recovered a normal condition after the injury, although there is evidence that normal sight was present for a time.

There was an extraordinary number of memoranda written by members of the Board in this case, and from an examination of them, as well as of the evidence, it appears that the case was neither properly presented in the record, nor properly considered by the Board. The consideration of the case narrowed down to the question of causal relation, based on the fact that the claimant did or did not receive a head injury, or its equivalent; yet the factual evidence, from which could be determined the actual and precise injury which claimant received in the fall, was never introduced. On the contrary the Board has concerned itself more with the opinions of contending doctors than with an effort to secure the facts upon which opinions might be less erringly based.

There is practically nothing in the record descriptive of the circumstances which might indicate the injuries likely to result from the fall in question. There was no attempt to show whether anything fell with the claimant, except the broken plank and the hot pitch; nor to indicate what obstructions, if any, he came in contact with during the progress of the fall, nor upon what objects he might have fallen; and in particular, there was no evidence as to the

character of the flooring upon which he fell, whether padded or not, and whether it consisted of earth, wood, cement, or other material. Nor is there any evidence to show what part of claimant's body struck the bottom first, or why claimant's arm was cut so badly that a tourniquet was used, or to what extent he was burned by the pitch. It does not appear whether claimant was rendered unconscious or not. While it is possible that a person may fall as the claimant did, without receiving serious head injuries, certainly they may be reasonably anticipated, whether by way of a direct trauma to the head, or by indirection through the spine.

On the first hearing, when claimant was sworn, he was not represented by counsel, and he was interrogated in the first instance by the adjuster for the State Insurance Fund, the carrier, and his testimony consumed less than three pages. That examination by the carrier had to do mainly with claimant's return to work, the present condition of his eye, and his doctor. A single question only was put to him by the carrier on the main fact in the case, whether he had suffered a head injury. The answer was inept as might be expected, and evidently incomplete, and rather meaningless. There was no effort made by the carrier, or by the referee, to discover the facts and circumstances from which trauma would or could be expected to follow; and it is evident that the claimant had no appreciation of his surroundings, or his plight. In the circumstances here, this failure to put the facts of claimant's case upon the record, and the subsequent scrutiny and refinement with which his evidence was considered by the Board, may be reasonably regarded as a failure to accord the claimant a fair trial.

Although there were many memoranda written, as above noted, in which the conclusions of the doctors were recited and discussed *seriatim*, yet the evidence of the witness De Santis, which was direct and positive on the facts and the question of causal relation, was not even adverted to. The Board decided the case upon the theory that there was no " direct " evidence of a fracture of the skull or other intercranial injury, held the claimant a malingerer, and dismissed the case, one member of the Board dissenting. It was error to hold that direct evidence was necessary to establish the injury mentioned.

The very facts which may have been involved in the accident, in view of the circumstances disclosed, may well have furnished ample and direct proof of head injury, or the contrary, had they been investigated. And the evidence of three doctors, *a posterori*, gives it as their opinion that there was a serious head injury, either a skull fracture, or other intercranial trauma. The witness De Santis testified that he had been acquainted with the claimant

for three or four years, worked with him for a week, and talked to him and looked into his eyes frequently; and that the eyes of the claimant always appeared to him to be normal before the accident, and not as they were at the hearing. The first reports of the employer, and of the attending physician, and of the eye surgeon, made shortly after the accident, all contain statements that the claimant was suffering from an eye injury. The eye surgeon, who made a report about one month after the accident, reported a blood clot at the base of the skull, from fracture of skull; and when reporting again three months after the accident, he states: " There was undoubtedly fracture at base of skull with pressure on right optic nerve." Nobody questions that the claimant is now blind in that eye, or that his eyes have not been normal at any time after the accident. And as indicating that no one questioned that there was a fracture of the skull at the time of the injury, the carrier conceded that fact at the first hearing in precise language. The referee inquired of the claimant, and the carrier answered: " Q. Did you have a fracture of the skull? Carrier: Yes, at the time of the accident July 24th." Thus it is clear that the case was decided by the Industrial Board on a wrong principle; in the language of the Board, "an unestablished serious head injury."

The Industrial Board is final in its findings of fact (Workmen's Comp. Law, § 20), and we may not disturb them, without regard to our own sensibilities and views of justice. In a large proportion of the cases that come to this court on appeal, awards are granted on evidence that is exceedingly meager; and in many cases the evidence clearly would not support the verdict of a jury. These observations, however, do not apply to cases where the State Insurance Fund is the insurance carrier. This court is of opinion that the records on appeal to this court over a long period show that a markedly higher degree of proof is required, and a more meticulous practice enforced, against the worker, to sustain his claim against the State Insurance Fund than is exacted when the claim is made against a private insurance company or a self-insurer.

The law does not contemplate that there are two standards of proof, and, therefore, two standards of justice in the enforcement of the Workmen's Compensation Law, dependent upon the fact that the claimant's compensation is insured in the one case by a private insurance company or a self-insurer, and in the other by the State Insurance Fund. The State Insurance Fund is an agency writing insurance contracts for the protection of workmen, for a premium, and is entitled to no immunities not accorded to private carriers. This case appears to us to be a fair illustration of the · practice which we assume to discuss. In the judgment of the court

no case heard at this term, where the facts were contested, was more substantially proved by the claimant than this case. Of course, the court would be bound by the finding of the Industrial Board in this case, as it would be on any other appeal, were it not shown affirmatively in the record that claimant's evidence has not been wholly or properly presented, has not been properly considered, and that the case was decided in apparent disregard of the direct and positive proof, and in apparent disregard even of the unqualified admission of the carrier.

The decision is reversed, and claim remanded for further consideration in harmony with the views and suggestions contained in this opinion, with costs to the claimant against the Industrial Board.

HILL, P. J., McNAMEE, CRAPSER, BLISS and HEFFERNAN, JJ., concur.

Decision reversed, and claim remitted for further consideration in harmony with the facts and suggestions contained in the opinion, with costs to the claimant against the State Industrial Board.